Exhibit C
to the Declaration of
Peter D. Suglia

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York ▼

| | |
|---|---|
| FDIC as Receiver for AmTrust Bank | ) |
| *Plaintiff* | ) |
| v. | ) |
| Rubin & Licatesi, P.C., et. al. | ) |
| *Defendant, Third-party plaintiff* | ) |
| v. | ) |
| Global Financial, Inc., et. al. | ) |
| *Third-party defendant* | ) |

Civil Action  No. 12-cv-5957(ADS)(ARL)

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*     SEE ATTACHMENT A

A lawsuit has been filed against defendant   Rubin & Licatesi, P.C.,et.al , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff  FDIC                                    .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

McManus & Richter, P.C.
48 Wall Street - 25th Floor
New York, New York 10005

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Thompson Hine LLP
335 Madison Ave. 12th Floor
New York, New York 10017

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached.  You may – but are not required to – respond to it.

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No. 12-cv-5957(ADS)(ARL)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):* _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**ATTACHMENT A**
**TO SUMMONS ON A THIRD-PARTY COMPLAINT**

TO:    GLOBAL FINANCIAL, INC.
337 Merrick Road – Suite 3
Lynbrook, New York 11563

JOANN KUNO
135 Mayfair Ave.
Floral Park, New York 1001

ALLISON J. RAM
100 Quentin Roosevelt Road
Garden City, New York 11530

HECTOR SUAZO
43 Central Avenue
Brooklyn, New York 11206

COURTNEY CARPENTER
811 E. 170th St.
Bronx, New York 10549

HASEA SPIKES
3439 Olinville Ave.
Bronx, New York 10467

VELDA THOMPSON
11648 148th St.
Jamaica, New York 11436

ONEIL GRANT
3044 Mathews Ave.
Bronx, New York 10467

MARGARET BIALKO
13409 120th Ave.
South Ozone Park, New York 11420

JOHN CHATMON
296 Woolworth Ave.
Yonkers, New York 10701

SNG CONSULTANTS, INC.
503 Knollcrest Lane
Chester, New York 10918

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMTRUST BANK,

                          Plaintiff,

           - against -

RUBIN & LICATESI, P.C., RICHARD HARRIS
RUBIN, ESQ., EDWARD SAVRAN, ESQ.,
ROSEMARY HAYDEN, NMR ADVANTAGE
ABSTRACT, LTD., and SELECT SERVICE
ABSTRACT, INC.,

                        Defendants.
------------------------------------------------------------------X
RUBIN & LICATESI, P.C.,  and
RICHARD HARRIS RUBIN, ESQ.,

               Third-Party Plaintiffs,

          -against-

GLOBAL FINANCIAL, INC., JOANN KUNO,
ALLISON J. RAM, HECTOR SUAZO,
COURTNEY CARPENTER, HASEA SPIKES,
VELDA THOMPSON, ONEIL GRANT,
MARGARET BIALKO, JOHN CHATMON and
SNG CONSULTANTS, INC.,

             Third-Party Defendants.
------------------------------------------------------------------X

Docket No.: 12-cv-5957
(ADS) (ARL)

**THIRD-PARTY
COMPLAINT**

**Jury Trial Demanded**

       Third-Party Plaintiffs, Rubin & Licatesi, P.C., and Richard Harris Rubin, Esq., by their

attorneys, McManus & Richter, P.C., as and for their Third-Party Complaint against the Third-

Party Defendants, Global Financial, Inc., Joann Kuno, Allison J. Ram, Hector Suazo, Courtney

Carpenter, Hasea Spikes, Velda Thompson, Oneil Grant, Margaret Bialko, John Chatmon and

SNG Consultants, Inc., respectfully allege, upon information and belief, as follows:

1

## OVERVIEW

1.     Without admitting any of the allegations contained in the Complaint, it is alleged by Plaintiff that AmTrust was caused to suffer damages as a result of the alleged breach of contract, breach of fiduciary duty, attorney malpractice, negligent misrepresentation and/or omission of the Defendants/Third-Party Plaintiffs.  A copy of Plaintiff's Complaint is attached hereto as Exhibit A.  Plaintiff alleges that AmTrust funded various mortgage loans that were allegedly based, in part, upon the use of inaccurate title commitments and were unauthorized "flip" transactions.  It is alleged that the true nature of the transaction was concealed from AmTrust at the time the loans closed.

## JURISDICTION AND VENUE

2.     As alleged by Plaintiff, this Court has subject matter jurisdiction of the main action pursuant to 12 U.S.C. § 1811 *et seq.,* 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

3.     The Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a) because the claims alleged herein are so related to the claims in the main action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     This Court has personal jurisdiction over the Third-Party defendants because, upon information and belief, they reside and/or transact business in the State of New York.

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because it is alleged that a substantial part of the events, omissions or conduct giving rise to these claims occurred in this judicial district.

2

**PARTIES**

6.    At all times hereinafter alleged, Rubin & Licatesi, P.C., was and is a domestic professional corporation authorized to conduct business within the State of New York.

7.    At all times hereinafter alleged, Richard Harris Rubin, Esq. (collectively with Rubin & Licatesi, P.C., as the "Rubin Defendants"), was and is an attorney at law licensed to practice law in the State of New York.

8.    It is alleged that the Rubin Defendants were engaged to act as the attorney for AmTrust with respect to six of the Subject Loans which are involved in this matter, to wit:  the Carpenter Transaction; the Spikes Transaction; the Padilla Transaction; the Thompson Transaction; the Grant Transaction; the Bialko Transaction.

9.    At all times hereinafter alleged Global Financial, Inc., was and is a domestic business corporation that maintains an office for the conduct of business at 337 Merrick Road, Lynbrook, New York, County of Nassau.

10.    At all times hereinafter alleged Joann Kuno was an employee of Global Financial, Inc., and, upon information and belief a resident of the City of Floral Park, State of New York.

11.    At all times hereinafter alleged Allison J. Ram was and is real estate appraiser licensed by the State of New York, license number 47-45883.

12.    At all times hereinafter alleged Allison J. Ram maintained an office for the conduct of business within the State of New York at 100 Quentin Roosevelt Road, Garden City, State of New York.

13.     At all times hereinafter alleged Hector Suazo was and is a real estate appraiser licensed by the State of New York, license number 48000042955 and was either an employee and/or associate of Allison J. Ram.

14.     At all times hereinafter alleged Hector Suazo maintained office for the conduct of business within the State of New York at 43 Central Ave., Brooklyn, State of New York 11206.

15.     Upon information and belief, at all times hereinafter alleged Courtney Carpenter was and is a resident of the City and State of New York.

16.     Upon information and belief, at all times hereinafter alleged Hasea Spikes was and is a resident of the City and State of New York.

17.     Upon information and belief, at all times hereinafter alleged Courtney Carpenter was and is a resident of the City and State of New York.

18.     Upon information and belief, at all times hereinafter alleged Oneil Grant was and is a resident of the City and State of New York.

19.     Upon information and belief, at all times hereinafter alleged Margaret Bialko was and is a resident of the City and State of New York.

20.     Upon information and belief, at all times hereinafter alleged John Chatmon was and is a resident of the City of Yonkers, State of New York.

21.     Upon information and belief, at all times hereinafter alleged SNG Consultants, Inc., was and is a domestic business corporation duly organized and existing pursuan to the laws of the State of New York.

## FACTUAL ALLEGATIONS

22.     At all times hereinafter alleged Global Financial, Inc., was in the business of originating residential mortgage loan applications and was an authorized AmTrust correspondent mortgage broker.

23.     Global Financial, Inc., and Joann Kuno in particular originated, prepared and submitted to AmTrust for approval and funding the residential mortgage loan applications in five of the six transactions alleged hereinabove, to wit:   the Carpenter Transaction; the Spikes Transaction; the Thompson Transaction; the Grant Transaction; the Bialko Transaction (collectively referred to as the "Global Transactions").

24.     Upon information and belief, in connection with the preparation and submission of the residential mortgage loan applications in the Global Transactions, Courtney Carpenter, Hasea Spikes, Velda Thompson, Oneil Grant and Margaret Bialko provided financial and other information demonstrating, *inter alia*, their respective income, assets, and financial liabilities to Global Financial, Inc., and Joann Kuno for submission to AmTrust.

25.     Global Financial, Inc., as an authorized AmTrust correspondent mortgage broker had a duty to provide AmTrust with accurate and correct residential loan applications and supporting documentation.

26.     Joann Kuno as an employee of Global Financial, Inc., had a duty to provide AmTrust with accurate and correct residential loan applications and supporting documentation.

27. Courtney Carpenter, Hasea Spikes, Velda Thompson, Oneil Grant and Margaret Bialko as loan applicants had a duty to provide AmTrust with accurate and correct residential loan applications and supporting documentation.

28. The residential mortgage loan applications and supporting documentation submitted in connection with the Global Transactions contained false, erroneous, incorrect and/or inaccurate information.

29. Global Financial, Inc., Joann Kuno, Courtney Carpenter, Hasea Spikes, Velda Thompson, Oneil Grant and Margaret Bialko knew or should have known the residential mortgage loan applications and supporting documentation submitted in connection with the Global Transactions contained false, erroneous, incorrect and/or inaccurate information.

30. As a result of the submission to AmTrust of mortgage loan applications and supporting documentation containing false, incorrect and/or inaccurate information, Global Financial, Inc., Joann Kuno, Courtney Carpenter, Hasea Spikes, Velda Thompson, Oneil Grant and Margaret Bialko breached their respective duties to AmTrust.

31. At all times hereinafter alleged Allison J. Ram was in the business of conducting residential property appraisals in connection with the purported purchase of real property and the submission of residential mortgage loan applications to banks such as AmTrust.

32. Upon information and belief, at all times hereinafter alleged Allison J. Ram utilized a business name, to wit, Allison Appraisals.

33. At all times hereinafter alleged Hector Suazo was an associate, employee and/or subordinate of Allison J. Ram.

6

34. Allison J. Ram appraised and issued the appraisal reports for the properties involved in the Global Transactions and/or supervised the appraisal and reports issued for the properties involved in the Global Transactions.

35. Hector Suazo appraised and issued an appraisal report for the property involved in the Grant Transaction.

36. Upon information and belief, the appraisals issued by Allison J. Ram and Hector Suazo were issued at the request of Global Financial, Inc., and/or Joann Kuno for use in connection with the submission of the residential mortgage loan applications submitted to AmTrust in the Global Transactions.

37. Allison J. Ram and Hector Suazo knew or should have known that AmTrust would rely upon their opinion as to the market value of the properties involved in the Global Transactions in determining whether to approve the subject loans based on the value of the properties.

38. Allison J. Ram and Hector Suazo owed a duty to AmTrust to accurately and honestly appraise the market value of the subject properties.

39. Upon information and belief, in rendering their appraisals of the subject properties, Allison J. Ram and Hector Suazo included in their appraisals information pertaining to the most recent transfer of the properties that was provided by John Chatmon and/or SNG Consultants, Inc., and/or NMR Advantage Abstract Ltd., and/or Select Services Abstract, Inc., that was inaccurate, incorrect and/or fraudulent.

40.     In rendering the appraisals, Allison J. Ram and Hector Suazo negligently, carelessly, recklessly, improperly and/or fraudulently concluded that the market value of the properties involved in the Global Transactions was equal to the purchase price stated in the residential real estate contracts of sale submitted in connection with the residential mortgage loan applications submitted in the Global Transactions.

41.     The appraisals rendered by Allison J. Ram and Hector Suazo negligently, carelessly, recklessly, improperly and/or fraudulently overstated the true market value of the properties involved in the Global Transactions and, therefore, Allison J. Ram and Hector Suazo breached their respective duties to AmTrust.

42.     Upon information and belief, AmTrust relied upon the residential mortgage loan applications submitted by Global Financial, Inc., and approved the residential mortgage loans in the Global Transactions based upon the information contained in the residential mortgage loan applications.

43.     Upon information and belief, AmTrust relied upon the residential property appraisals and approved the residential mortgage loans in the Global Transactions based upon the information contained therein.

## COUNT I – CONTRIBUTION

44.     The Third-Party Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs "1" through "43" of this Third-Party Complaint with the same force and effect as if fully set forth herein.

45.     That in the event that Third-Party Plaintiffs are held liable to the Plaintiff for damages, and by reason of the transactions alleged in the Complaint, Third-Party Plaintiffs will have been damaged by Third-Party Defendants, their agents, servants and/or employees, in all sums that the Plaintiff is or may be entitled to as a result of the injuries complained of in this action, and Third-Party Plaintiffs are entitled to contribution over and against Third-Party Defendants, their agents, servants, and/or employees, for all or part of any such verdicts, judgment or other sums based upon apportionment of responsibilities.

46.     That in the event the Plaintiff was caused to sustain injury and damage as alleged in the Plaintiff's complaint through any negligence and/or breach of duty other than the Plaintiff's own carelessness and negligence, said damages were sustained by reason of the negligence, carelessness, omissions, culpable conduct, breach of duty or breach of contract/agreement of the Third-Party Defendants, and if any judgment is recovered herein by the Plaintiff against the Third-Party Plaintiffs, then the Third-Party Plaintiffs will be damaged thereby and the Third-Party Defendants will be responsible therefore, in whole or in part.

47.     By reason of the foregoing, the Third-Party Plaintiffs are entitled to recover by way of contribution, in whole or in part, from Third-Party Defendants for the full amount of any recovery herein by the Plaintiff or for that proportion thereof caused by the relative culpability of the said Third-Party Defendants.

### JURY DEMAND

Third-Party Plaintiffs respectfully request a jury for all claims properly decided by a jury.

WHEREFORE, the Third-Party Plaintiffs demand judgment over and against the Third-Party Defendants for all or any part of any judgment or verdict rendered against them, for full contribution together with the costs and disbursements of this action including reasonable attorneys' fees and the costs of investigation.

Dated:      New York, New York
            April 29, 2014

                                    McManus & Richter, P.C.

                                    By: _____
                                        Peter D. Suglia (PS3074)
                                        Anne P. Richter (AR5683)
                                    Attorneys for Third-Party Plaintiffs
                                    Rubin & Licatesi, P.C. and
                                    Richard Harris Rubin, Esq.
                                    48 Wall Street – 25th Floor
                                    New York, New York 10005
                                    (212) 425-3100
                                    psuglia@mcmanusandrichter.com
                                    arichter@mcmanusandrichter.com

10

**EXHIBIT A**
**TO THIRD-PARTY COMPLAINT OF**
**RUBIN & LICATESI, P.C. and RICHARD HARRIS RUBIN**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

CV 12 5957

## I. (a) PLAINTIFFS

Federal Deposit Insurance Corporation as Receiver for AmTrust Bank

**(b)** County of Residence of First Listed Plaintiff _____

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Thompson Hine LLP, 335 Madison Avenue, 12th Floor, New York 10017, (212) 344-5680, Joseph W. Muccia and Emily J. Mathieu

## DEFENDANTS

Rubin & Licatesi, P.C., Richard Harris Rubin, Esq., Edward Savran, Esq., d/b/a/ Law Office of Edward Savran, Rosemary Hayden, NMR Advantage Abstract, Ltd., and Select Service Abstract, Inc.

County of Residence of First Listed Defendant    Nassau

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:
Breach of contract; breach of fiduciary duty; attorney malpractice; negligent misrepresentation; negligence

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
To be determined

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

To be assigned. Case is Federal Deposit Ins. Corp. v. Horn, et al.

JUDGE To be assigned.

DOCKET NUMBER To be assigned.

DATE
7/03/2012

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**ARBITRATION OF ARBITRATION ELIGIBILITY**

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _Joseph W. Muccia_____, counsel for _FDIC as Receiver for AmTrust Bank_, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☒      monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐      the complaint seeks injunctive relief,

☐      the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)      Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? _No_

2.)      If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? _Yes_

b) Did the events of omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? _Yes_

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?
(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
     ☒ Yes      ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
     ☐ Yes      (If yes, please explain)      ☒ No

I certify the accuracy of all information provided above.

Signature: _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR AMTRUST BANK | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) Civil Action No.   12-5957 |
| RUBIN & LICATESI, P.C,  et al. | ) ) ) |
| | ) ) |
| *Defendant(s)* | ) |

CV 12 - 5957

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  SEE ATTACHMENT A

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Joseph W. Muccia
Thompson Hine LLP
335 Madison Ave., 12th Floor
New York, New York 10017
212-344-5680

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER

*CLERK OF COURT*

Date: DEC 0 3 2012

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## ATTACHMENT A TO SUMMONS

Rubin & Licatesi, P.C.
591 Stewart Avenue
Garden City, New York 11530

Richard Harris Rubin, Esq.
591 Stewart Avenue
Garden City, New York 11530

Edward Savran, Esq.
d/b/a Law Office of Edward Savran
585 Stewart Avenue, #640
Garden City, New York 11530

Rosemary Hayden
585 Stewart Avenue, #640
Garden City, New York 11530

NMR Advantage Abstract, Ltd.
734 Walt Whitman Road,
Suite 302
Melville, New York 11747

Select Service Abstract, Inc.
1497 South Meadow Road
Merrick, New York 11566

AO 85 (Rev. EDNY 8/2/2012) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge

# UNITED STATES DISTRICT COURT
for the
## EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. |
| _____ | ) | |
| Defendant | ) | |

## NOTICE, CONSENT, AND REFERENCE OF A CIVIL ACTION TO A MAGISTRATE JUDGE

*Notice of a magistrate judge's availability.* A United States magistrate judge of this court is available to conduct all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of a final judgment. The judgment may then be appealed directly to the United States court of appeals like any other judgment of this court. A magistrate judge may exercise this authority only if all parties voluntarily consent. You may consent to the magistrate judge assigned to this case or to a new magistrate judge selected at random.

You may consent to have your case referred to a magistrate judge, or you may withhold your consent without adverse substantive consequences. The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with your case.

*Consent to a magistrate judge's authority.* The following parties consent to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.

Select one:   The parties consent to ☐ the magistrate judge who is assigned to this case
☐ a new magistrate judge selected at random.

| *Parties' printed names* | *Signatures of parties or attorneys* | *Dates* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

In order for the Consent to be valid, all parties must sign this form and agree to the selection of the magistrate judge.

### Reference Order

**IT IS ORDERED:** This case is referred to a United States magistrate judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Date: _____

_____
*District Judge's signature*

_____
*Printed name and title*

Note:   Do not return the form to the Clerk of Court or file it on ECF unless all parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Do not return this form to a Judge.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMTRUST BANK

           Plaintiff,

v.

RUBIN & LICATESI, P.C., RICHARD HARRIS
RUBIN, ESQ., EDWARD SAVRAN, ESQ.,
ROSEMARY HAYDEN, NMR ADVANTAGE
ABSTRACT, LTD., and SELECT SERVICE
ABSTRACT, INC.

           Defendants.

Case No.:    12-5957

**COMPLAINT**

**Jury Demand Attached**

---

Plaintiff, Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for

AmTrust Bank, F.S.B. ("FDIC-R"), for its Complaint, states as follows:

## OVERVIEW

1.    AmTrust Bank, F.S.B. ("AmTrust") disbursed over $3.2 million dollars that it

intended to be used to fund seven residential mortgage loans.  AmTrust was a federally chartered

savings bank that was placed into receivership on December 4, 2009.  The FDIC-R succeeded to

all of AmTrust's claims.  After closing the loans, AmTrust learned that the seven loans involved

the use of inaccurate title commitments, unauthorized "flip" transactions, and the unauthorized

disbursements of loan funds (hereinafter the "Subject Loans").  The true nature of these

transactions was concealed from AmTrust at the time the loans closed.

2.      Defendants each played a role in these transactions, and are culpable due to breach of contract, breach of fiduciary duty, attorney malpractice, negligent misrepresentation, and/or negligence

## JURISDICTION AND VENUE

3.      The FDIC is a corporation organized and existing under the laws of the United States of America.  Under the Federal Deposit Insurance Act ("FDIA"), the FDIC is authorized to be appointed as receiver for failed insured depository institutions.  This Court has subject matter jurisdiction for this action pursuant to 12 U.S.C. § 1811 *et seq.*, 12 U.S.C. § 1819(b)(1) and (2), and 28 U.S.C. §§ 1331 and 1345.  Actions to which the FDIC-R is a party are deemed to arise under the laws of the United States.  The FDIC, including in its capacity as Receiver, has the authority to sue and complain in any court of law, and is empowered to pursue claims held by AmTrust, including its claims against the Defendants. 12 U.S.C. § 1819.

4.      This Court has personal jurisdiction over all Defendants because they reside and/or transact business in the State of New York.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

6.      The Defendants engaged in improper activities to close seven residential mortgage loans concerning properties, the majority of which are located in Kings and Queens counties.  The Defendants' activities adversely affected the value of these properties, which were pledged as collateral for the seven Subject Loans.

2

### A.    The Plaintiff

7.    AmTrust was a federally chartered savings bank with its principal place of business in Cleveland, Ohio.

8.    On December 4, 2009, AmTrust was closed by the Office of Thrift Supervision and Plaintiff, the FDIC, was appointed as Receiver for AmTrust pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5). Under the FDIA, the FDIC as receiver succeeds to all claims held by banks for which it is the receiver.  1821(d)(2)(A)(i). The FDIC-R owns the subject claims and has standing to prosecute this action as receiver for AmTrust.

9.    As receiver, the FDIC is tasked with the obligation to recover losses incurred by AmTrust as a result of its operations, including losses resulting to AmTrust because of loans funded by AmTrust.

### B.    The Closing Agents

10.    Defendant Rubin & Licatesi, P.C. ("Rubin Firm") is a New York professional corporation, with its principal place of business located at 591 Stewart Ave., Garden City, New York 11530.

11.    Defendant Richard Harris Rubin ("Rubin," and collectively with the Rubin Firm, the "Rubin Defendants") is an individual licensed as an attorney by the State of New York, having a business address of 591 Stewart Ave., Garden City, NY 11530.

12.    The Rubin Defendants were engaged to act as AmTrust's attorney for six of the Subject Loans.  The Rubin Defendants agreed to be bound by AmTrust's Closing Instructions in connection with each of the Subject Loans as to which they were retained, a sample of which are attached hereto as Exhibit A (collectively "Closing Instructions").

3

13.     Defendant Edward Savran, Esq. ("Savran") is an individual licensed as an attorney by the State of New York who is, upon information and belief, doing business as Law Office of Edward Savran. Savran has a business address of 585 Stewart Avenue #640, Garden City, New York 11530. Savran acted as AmTrust's closing attorney for one of the Subject Loans.

14.     Defendant Rosemary Hayden ("Hayden," and collectively with Savran, the "Savran Defendants") is an individual licensed as an attorney by the State of New York, upon information and belief, having a business address of 585 Stewart Avenue #640, Garden City, New York 11530. Upon information and belief, Hayden was an employee of the Law Office of Edward Savran.

15.     The Savran Defendants were engaged to act as AmTrust's attorney for one of the Subject Loans. The Savran Defendants agreed to be bound by AmTrust's Closing Instructions in connection with each of the Subject Loans as to which they were retained.

16.     The Rubin Defendants and the Savran Defendants are referred to collectively as the "Closing Agents."

**C.     The Title Agents**

17.     Defendant NMR Advantage Abstract, Ltd. ("NMR") is a New York limited liability company with its principal place of business at 734 Walt Whitman Road, Suite 302, Melville, New York.

18.     NMR negligently issued title commitments in connection with three of the Subject Loans, which inaccurately stated the status of title to the properties that were the subjects of the transactions.

4

19.    Defendant Select Service Abstract, Inc. ("Select Service," collectively with NMR, the "Title Agents") is a New York corporation with its principal place of business at 1497 South Meadow Road, Merrick, New York 11566.

20.    Select Service negligently issued title commitments in connection with three of the Subject Loans, which inaccurately stated the status of title to the properties that were the subjects of the transactions.

### FACTUAL ALLEGATIONS

**A.    The Subject Loans**

21.    The AmTrust loans that are the subject of this Complaint related to the purported sales of properties at the following locations:

|  | Borrower: | Address: |
|---|---|---|
| a. | Courtney Carpenter | 115-70 203rd Street, Saint Albans, NY 11412 |
| b. | Hasea Spikes | 137-17 233rd Street, Laurelton, NY 11422 |
| c. | Pablo Padilla | 2078 Honeywell Ave, Bronx, NY 10460 |
| d. | Velda Thompson | 116-48 148th Street, Jamaica, NY 11436 |
| e. | Oneil Grant | 461 Milford Street, Brooklyn, NY 11208 |
| f. | Margaret Bialko | 134-09 120th Avenue, South Ozone Park, NY 11420 |
| g. | Marc Vogel | 306 Eldert Lane, Brooklyn, NY 11208 |

22.    Each of the Subject Loans is in default and went into default shortly after the loans were closed.

## B.    AmTrust's Closing Instructions

23.    In exchange for a fee, the Rubin Defendants agreed to serve as the Closing Agents in connection with the closing of six of the Subject Loans, and agreed to follow AmTrust's Closing Instructions.

24.    In exchange for a fee, the Savran Defendants agreed to serve as the Closing Agents in connection with the closing of one of the Subject Loans, and agreed to follow AmTrust's Closing Instructions.

25.    By signing the Closing Instructions and conducting the closings, the Closing Agents assumed fiduciary and contractual duties to AmTrust.

26.    The Closing Instructions outline the importance of the Closing Agents' role, stating that:

> Closing Agent has special knowledge that the Lender cannot obtain from any other source.  Lender is relying on Closing Agent to communicate to Lender any material fact known or suspected which may arise during or out of the closing and settlement process.  Closing Agent has a duty to provide Lender precise and correct information, and to alert Lender to facts and events that might affect Lender's decision to make the loan.

27.    The Closing Agents were specifically instructed to close the loans "in accordance with the Lender's Master Closing Instructions and Supplemental Closing Instructions" and certified that they had done so in "compliance with all the conditions outlined in these instructions."

28.    The Closing Instructions provided that the Closing Agents were authorized to act only as directed by the Closing Instructions, stating in part:

> In closing this loan, you . . . must follow the instructions and satisfy the conditions set forth in these Master Closing Instructions, the Supplemental Closing Instructions, and, if the loan has been designated to use an electronic mortgage note, the special E-Document Closing Instructions, all of which, taken together, constitute the closing instructions.  Do not

6

proceed unless you are fully prepared to follow these instructions. . . . Any and all modifications to the Closing Instructions must be in writing and executed by AmTrust.

The Closing Agent will be liable for losses incurred by AmTrust Bank as a result of closing a loan with the knowledge that errors were contained in any documents or instructions. If the Closing Agent determines that a loan cannot be closed in accordance with these Closing Instructions, . . . do not close without further instructions from AmTrust Bank. . .

29.   The Closing Instructions further emphasized strict compliance, providing:

YOU MUST READ ALL CLOSING INSTRUCTIONS THOROUGHLY PRIOR TO COMMENCING THE CLOSING AND CONTACT [AMTRUST BANK] IMMEDIATELY IF, FOR ANY REASON, YOU CANNOT COMPLY WITH THEM.

30.   Additionally, the Closing Instructions required that:

If the property has been subject to a closing or transfer of title within one year prior to the current transaction or if the Closing Agent knows or has reason to believe that it is the subject of an intended concurrent or subsequent transaction, Closing Agent must notify Closing contact and obtain Closing Contact's written consent to close.

31.   The Closing Instructions further provided that the Closing Agents must halt the closing and contact AmTrust:

If the Seller of the property, as identified on the HUD-1 Settlement Statement and the Purchase Agreement is not the owner of record, or if the County or Parish land records show that the Seller is not in title at least one year prior to the closing date.

32.   The Closing Instructions also required that if the Closing Agents observed any payoffs other than to clear title, or other than to the seller, the Closing Agent must halt the proceedings and contact AmTrust. Specifically, the Closing Instructions provided:

All funds must pass through escrow and should be noted on the HUD-1 Settlement Statement. Copies of down payment checks or funds needed to close must be sent to Closing Contact for approval prior to disbursement of loan proceeds.

33.    The Closing Instructions further provided that "Closing Agent must disburse Seller's Proceeds only to the Seller, its authorized agent or attorney in fact."

34.    The Closing Instructions also required that the Closing Agent stop the transaction and contact AmTrust:

> If funds are to be disbursed for any reason other than (i) to individuals or entities specifically mentioned in the Sales Contract, (ii) to pay off or otherwise insure that Lender has a first and superior deed of trust or mortgage lien . . ., (iii) to pay fees paid to individuals or entities that are customary and or prevalent for standard mortgage lending transactions, (iv) to pay off legitimate mechanics or materials lines (sic), tax liens or judgment liens, or (v) to pay down or off creditors of the Borrower required to satisfy underwriting conditions.

35.    Despite these specific instructions, the Closing Agents failed to disburse the loan proceeds in accordance with the HUD-1 Settlement Statements, disbursed funds to individuals and entities other than the sellers, and failed to ensure that the seller was in title to the property for more than one year prior to closing.

## C.    The Subject Loan Transactions

### The Carpenter Transaction

36.    On September 18, 2008, AmTrust made a loan to Courtney Carpenter ("Carpenter") to purchase the property located at 115-70 203rd Street, Saint Albans, New York from John Chatmon ("Chatmon") for $577,000.

37.    In connection with this transaction, Carpenter executed a Mortgage in favor of AmTrust in the amount of $461,600 and a Note payable to AmTrust in the amount of $461,600.

38.    The Rubin Defendants acted as AmTrust's closing attorney for the Carpenter loan transaction.

39.    Select Service acted as the title agent for the Carpenter loan transaction.

40.    Select Service issued a title commitment in connection with the Carpenter transaction that incorrectly stated that as of October 28, 2008, title to the property was vested in Chatmon by virtue of a deed to Chatmon from Deutsche Bank dated January 7, 2008 that was recorded.

41.    Actually, Chatmon did not have title to the property at the time Select Service made this representation.

42.    The property was involved in a "flip" transaction.

43.    A "flip" transaction consists of repeated sales of a property within a short period of time, and for AmTrust's purposes, within one year or less.

44.    Chatmon obtained the property from Deutsche Bank on October 28, 2008, the date of Carpenter's closing. The deed was not recorded as of that date. Chatmon then transferred the property to Carpenter.

45.    The Rubin Defendants prepared a HUD-1 Settlement Statement for the Carpenter transaction showing that Chatmon received $566,469.75 at closing.

46.    The Rubin Defendants' disbursement log, which details their disbursement of AmTrust's loan funds for the Carpenter transaction, shows that Chatmon did not receive $566,469.75 as stated on the HUD-1 Settlement Statement.

47.    Instead, the log reflects various disbursements that were not reflected on the HUD-1 Settlement Statement.

48.    The Rubin Defendants disbursed an extra $150 to themselves that was not permitted by the Closing Instructions.

49.    The Rubin Defendants disbursed $4,845 to Select Services that is not explained in the Closing Instructions or reflected on the HUD-1.

9

50.     The Rubin Defendants disbursed $55,000 to Kahile Blake, who, upon information and belief, is Carpenter's son.

51.     The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions and they failed to follow the Closing Instructions.

52.     The Rubin Defendants failed to notify AmTrust that the terms of Carpenter's loan transaction did not match what was represented on the HUD-1 Settlement Statement for Carpenter's loan, and failed to notify AmTrust that the seller was not the record owner of the property for one year prior to closing. The Rubin Defendants failed to stop the closing of Carpenter's loan, as required by AmTrust's Closing Instructions.

53.     Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.

54.     As a result, the true purchase price of the property was no more than $330,000 (the price Chatmon paid for the property), which would have yielded a 140 percent loan-to-value ("LTV") ratio. If AmTrust had known these facts, it would not have funded the loan because it exceeded the intended 80 percent LTV ratio cap for this loan. Moreover, AmTrust would not have closed the loan if AmTrust had known that the seller did not have record title to the property for at least three months prior to closing and that there were unauthorized disbursements.

*The Spikes Transaction*

55.     On August 28, 2008, AmTrust made a loan to Hasea Spikes ("Spikes") to purchase the property located at 137-17 233rd Street, Laurelton, New York from Chatmon for $610,000.

56.     In connection with this transaction, Carpenter executed a Mortgage in favor of AmTrust in the amount of $457,500 and a Note payable to AmTrust in the amount of $457,500.

57.     The Rubin Defendants acted as AmTrust's closing attorney for the Spikes loan transaction.

58.     NMR acted as the title agent for the Spikes loan transaction.

59.     NMR issued a title commitment in connection with the Spikes transaction that incorrectly stated that as of July 1, 2008, title to the property was vested in Chatmon (incorrectly spelled "Chatman") by virtue of a deed to Chatmon from Deutsche Bank National Trust Company ("DBNTC") dated December 7, 2007.

60.     Actually, Chatmon did not have title to the property at the time NMR made this representation.

61.     The property was involved in a "flip" transaction.  Chatmon obtained the property from DBNTC on August 28, 2008, the day he sold it to Spikes.

62.     The Rubin Defendants prepared a HUD-1 Settlement Statement for the Spikes transaction.

63.     The Rubin Defendants' disbursement log, which details their disbursement of AmTrust's loan funds for the Spikes transaction, shows several disbursements that were not reflected on the HUD-1 Settlement Statements.

64.     The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions, and they failed to follow the Closing Instructions.

65.     The Rubin Defendants failed to notify AmTrust that the terms of Spikes' loan transaction did not match what was represented on the HUD-1 Settlement Statement for Spikes'

11

loan, and failed to notify AmTrust that the seller was not the record owner of the property for one year prior to closing.  The Rubin Defendants failed to stop the closing of Spikes' loan, as required by AmTrust's Closing Instructions.

66.     Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.

67.     As a result, the true purchase price of the property was no more than $290,000 (the price Chatmon paid for the property), which would have yielded a 158 percent LTV ratio.  If AmTrust had known these facts, it would not have funded the loan because it exceeded the intended 75 percent LTV ratio cap for this loan.  Moreover, AmTrust would not have closed the loan if it had known that the seller did not have record title to the property for at least three months prior to closing and that there were unauthorized disbursements.

*The Padilla Transaction*

68.     On July 25, 2008, AmTrust made a loan to Pablo Padilla ("Padilla") to purchase the property located at 2078 Honeywell Avenue, Bronx, New York from Chatmon for $545,000.

69.     In connection with this transaction, Padilla executed a Mortgage in favor of AmTrust in the amount of $490,500 and a Note payable to AmTrust in the amount of $490,500.

70.     The Rubin Defendants acted as AmTrust's closing attorney for the Padilla loan transaction.

71.     The Rubin Defendants prepared a HUD-1 Settlement Statement for the Padilla transaction that indicated that two prior mortgages on the property were paid off at closing.

72.     Additionally, the Rubin Defendants' disbursement log indicated that it disbursed funds to two lenders to pay off two prior mortgages on the property.

73.     The two prior mortgages were never satisfied, and remain liens on the property.

12

74.     Accordingly, AmTrust's mortgage was in third lien position.

75.     The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions, and they failed to follow the Closing Instructions.

76.     The Rubin Defendants failed to notify AmTrust that the terms of Padilla's loan transaction did not match what was represented on the HUD-1 Settlement Statement for Padilla's loan, failed to ensure that AmTrust's loan was in first position, and failed to stop the closing of Padilla's loan as required by AmTrust's Closing Instructions.

77.     Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.  Moreover, if AmTrust had known that its lien would not be recorded in first position, AmTrust would not have funded the loan.

*The Thompson Transaction*

78.     On November 6, 2008, AmTrust made a loan to Velda Thompson ("Thompson") to purchase the property located at 116-48 148th Street, Jamaica, New York from Chatmon for $600,000.

79.     In connection with this transaction, Thompson executed a Mortgage in favor of AmTrust in the amount of $466,400 and a Note payable to AmTrust in the amount of $466,400.

80.     The Rubin Defendants acted as AmTrust's closing attorney for the Thompson loan transaction.

81.     Select Service acted as the title agent for the Thompson loan transaction.

82.     Select Service issued a title commitment in connection with the Thompson transaction that incorrectly stated that as of October 10, 2008, title to the property was vested in Chatmon by virtue of a deed to Chatmon from The Bank of New York Trust Company, as

13

successor to JP Morgan Chase Bank, NA Trustee ("Bank of New York") dated February 6, 2008 and recorded on February 15, 2008.

83.    Actually, Chatmon did not have title to the property at the time Select Service made this representation.

84.    The property was involved in a "flip" transaction. Chatmon obtained the property from Bank of New York on October 22, 2008, less than two weeks before he transferred the property to Thompson. The deed transferring title to Chatmon was not recorded at the time Thompson's loan closed.

85.    The Rubin Defendants prepared a HUD-1 Settlement Statement for the Thompson transaction that shows that Chatmon received a disbursement of $570,975.00 at closing.

86.    The Rubin Defendants' disbursement log, which details their disbursement of AmTrust's loan funds for the Thompson transaction, shows that Chatmon did not receive $570,975.00 as stated on the HUD-1 Settlement Statement.

87.    Instead, the log reflects various disbursements that were not reflected on the HUD-1 Settlement Statement.

88.    The Rubin Defendants disbursed an extra $150 to themselves that was not permitted by the Closing Instructions.

89.    The Rubin Defendants disbursed $1,635 to Select Service that is not explained in the Closing Instructions or reflected on the HUD-1.

90.    The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions and they failed to follow the Closing Instructions.

14

91.    The Rubin Defendants failed to notify AmTrust that the terms of Thompson's loan transaction did not match what was represented on the HUD-1 Settlement Statement for Thompson's loan, and failed to notify AmTrust that the seller was not the record owner of the property for one year prior to closing.  The Rubin Defendants failed to stop the closing of Thompson's loan, as required by AmTrust's Closing Instructions.

92.    Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.

93.    As a result, the true purchase price of the property was no more than $325,000 (the price Chatmon paid for the property), which would have yielded a 168 percent LTV ratio.  If AmTrust had known these facts, it would not have funded the loan because it exceeded the intended 77.73  percent LTV ratio cap for this loan.  Moreover, AmTrust would not have closed the loan had known that the seller did not have record title to the property for at least three months prior to closing or that there were undisclosed disbursements.

### The Grant Transaction

94.    On October 3, 2008, AmTrust made a loan to Oneil Grant ("Grant") to purchase the property located at 461 Milford St., Brooklyn, New York from Chatmon for $595,000.

95.    In connection with this transaction, Grant executed a Mortgage in favor of AmTrust in the amount of $476,000 and a Note payable to AmTrust in the amount of $476,000.

96.    The Rubin Defendants acted as AmTrust's closing attorney for the Grant loan transaction.

97.    Select Service acted as the title agent for the Grant loan transaction.

98.    Select Service issued a title commitment in connection with the Grant transaction that incorrectly stated that as of August 1, 2008,  title to the property was vested in Chatmon by

virtue of a deed to Chatmon from Wells Fargo Bank National Association ("Wells Fargo") dated January 1, 2008 and recorded on January 15, 2008.

99.     Actually, Chatmon did not have title to the property at the time Select Service made this representation.

100.    The property was involved in a "flip" transaction. Chatmon obtained the property from Wells Fargo on September 15, 2008, two weeks before he transferred the property to Grant. The deed transferring title to Chatmon was not recorded at the time Grant's loan closed.

101.    The Rubin Defendants' disbursement log, which details their disbursement of AmTrust's loan funds for the Thompson transaction, shows that the Rubin Defendants disbursed an extra $200 to themselves that was not permitted by the Closing Instructions.

102.    The Rubin Defendants disbursed $1,635 to Select Services that is not explained in the Closing Instructions or reflected on the HUD-1.

103.    The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions, and they failed to follow the Closing Instructions.

104.    The Rubin Defendants failed to notify AmTrust that the terms of Grant's loan transaction did not match what was represented on the HUD-1 Settlement Statement for Grant's loan, and failed to notify AmTrust that the seller was not the record owner of the property for one year prior to closing. The Rubin Defendants failed to stop the closing of Grant's loan, as required by AmTrust's Closing Instructions.

105.    Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.

106.    As a result, the true purchase price of the property was no more than $283,920 (the price Chatmon paid for the property), which would have yielded a 168-percent LTV ratio. If AmTrust had known these facts, it would not have funded the loan because it exceeded the intended 80 percent LTV ratio cap for this loan. Moreover, AmTrust would not have closed the loan had it known that the seller did not have record title to the property for at least three months prior to closing and that there were unauthorized disbursements.

*The Bialko Transaction*

107.    On September 17, 2008, AmTrust made a loan to Margaret Bialko ("Bialko") to purchase the property located at 130-09 120th Avenue, South Ozone Park, New York from SNG Consultants, Inc. ("SNG") for $460,000.

108.    In connection with this transaction, Bialko executed a Mortgage in favor of AmTrust in the amount of $391,000 and a Note payable to AmTrust in the amount of $391,000.

109.    The Rubin Defendants acted as AmTrust's closing attorney for the Bialko loan transaction.

110.    NMR acted as the title agent for the Bialko loan transaction.

111.    NMR issued a title commitment in connection with the Bialko transaction that incorrectly stated that as of August 18, 2008, title to the property was vested in SNG by virtue of a deed to SNG from REO Properties Corporation ("REO") dated October 3, 2007.

112.    Actually, SNG did not have title to the property at the time Select Service made this representation.

113.    The property was involved in a series of "flip" transactions. REO transferred the property to C&N Holdings Inc. ("C&N") via a deed dated September 10, 2008, which was not recorded until October 10, 2008, nearly a month after the closing of Bialko's loan. C&N then

17

transferred the property to SNG via a deed dated September 16, 2008, the day before Bialko's loan closed.  SNG then transferred the property to Bialko.

114.    The Rubin Defendants prepared a HUD-1 Settlement Statement for the Bialko transaction that shows that SNG received a disbursement of $430,985 at closing.

115.    The Rubin Defendants' disbursement log, which details their disbursement of AmTrust's loan funds for the Bialko transaction, shows that SNG did not receive $430,985 as stated on the HUD-1 Settlement Statement.

116.    Rather, the log reflects various disbursements that were not reflected on the HUD-1 Settlement Statement.

117.    The Rubin Defendants disbursed an extra $200 to themselves that was not permitted by the Closing Instructions.

118.    The Rubin Defendants disbursed $235,000 to C&N that is not reflected on the HUD-1.

119.    The Rubin Defendants were responsible for serving as AmTrust's attorney in connection with this mortgage loan pursuant to AmTrust's Closing Instructions, and they failed to follow the Closing Instructions.

120.    The Rubin Defendants failed to notify AmTrust that the terms of Bialko's loan transaction did not match what was represented on the HUD-1 Settlement Statement for Bialko's loan, and failed to notify AmTrust that the seller was not the record owner of the property for one year prior to closing.  The Rubin Defendants failed to stop the closing of Bialko's loan, as required by AmTrust's Closing Instructions.

121.    Had AmTrust known that the Rubin Defendants violated its Closing Instructions, it would not have funded this loan.

18

## COUNT I – BREACH OF CONTRACT

### (CLOSING AGENTS)

135. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

136. The Closing Agents entered into valid contracts with AmTrust in the form of the Closing Instructions and agreed to perform the closing of the Subject Loans in accordance with those Closing Instructions.

137. The Closing Agents breached their agreements with AmTrust, which were set forth in the Closing Instructions by, among other breaches: (a) disbursing loan funds in a manner inconsistent with the HUD-1 Settlement Statements; (b) preparing and submitting HUD-1 Settlement Statements that did not accurately reflect the actual receipts and disbursements from the closings of the Subject Loans; (c) disbursing loan proceeds to entities other than the seller, the seller's attorney, or to pay off existing mortgage liens; (d) allowing the loans to close when the seller was not the owner of record for one year or more; (e) taking more money for themselves as attorney's fees than was permitted by the Closing Instructions; and (f) failing to notify AmTrust before closing the Subject Loans of conditions that violated the Closing Instructions.

138. If the Closing Agents had complied with the terms of the Closing Instructions, AmTrust would not have funded the Subject Loans, all of which are now in default and severely under-secured.

139. The Closing Agents' material breaches of contract proximately caused a loss to the FDIC-R in an amount to be proven at trial.

21

## COUNT II – BREACH OF FIDUCIARY DUTY

### (CLOSING AGENTS)

140.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

141.    The Closing Agents assumed a duty to advise and/or protect AmTrust in this transaction by providing their professional services, for which they received a fee.

142.    AmTrust relied on a relationship of trust and confidence with the Closing Agents in the performance of these professional services, and understood that the Closing Agents would act in a fiduciary capacity with regard to their services to lenders such as AmTrust.

143.    The Closing Agents knew AmTrust would rely upon the proper performance of the Closing Agents' professional services.

144.    The Closing Agents breached their fiduciary duties to AmTrust by, among other breaches: (a) disbursing loan funds in a manner inconsistent with the HUD-1 Settlement Statements; (b) preparing and submitting HUD-1 Settlement Statements that did not accurately reflect the actual receipts and disbursements from the closings of the Subject Loans; (c) disbursing loan proceeds to entities other than the seller, the seller's attorney, or to pay off existing mortgage liens; (d) allowing the loans to close when the seller was not the owner of record for one year or more; (e) taking more money for themselves as attorney's fees than was permitted by the Closing Instructions; and (f) failing to notify AmTrust before closing the Subject Loans of conditions that violated the Closing Instructions.

145.    The Closing Agents' breaches of their fiduciary duty caused AmTrust to fund mortgages that it otherwise would not have funded.

146.    The Closing Agents' breaches of their fiduciary duties proximately caused a loss to the FDIC-R in an amount to be proven at trial.

22

## COUNT III – ATTORNEY MALPRACTICE

### (CLOSING AGENTS)

147.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

148.   The Closing Agents are attorneys licensed to practice in New York.

149.   The Closing Agents were retained to serve as AmTrust's closing agents and owed AmTrust contractual and fiduciary duties in connection with their roles as AmTrust's closing agent.

150.   The Closing Agents executed AmTrust's Closing Instructions, confirming that they were AmTrust's closing agents and that they were to follow AmTrust's specific directives contained in the Closing Instructions for each of the Subject Loans.

151.   As AmTrust's attorneys, the Closing Agents had a duty to use such skill, prudence and diligence as members of the legal profession commonly possess and exercise in providing legal services to AmTrust.

152.   The Closing Agents were paid a fee for their services pursuant to the Closing Instructions.

153.   AmTrust's Closing Instructions were detailed in order to assist the closing agent in identifying possible fraud or other risks to AmTrust that might become clear at closing.

154.   The Closing Agents were placed in a position of confidence by AmTrust to be vigilant in guarding against fraud or misrepresentations and to ensure that the loan transactions that actually closed were consistent with the HUD-1 Settlement Statements for those loans and were consistent with the documents and loan application materials that were submitted to AmTrust prior to the loans' closings.

23

155.    The Closing Agents repeatedly breached their fiduciary and contractual duties owed to AmTrust as AmTrust's attorneys by, without limitation, (a) disbursing loan funds in a manner inconsistent with the HUD-1 Settlement Statements; (b) preparing and submitting HUD-1 Settlement Statements that did not accurately reflect the actual receipts and disbursements from the closings of the Subject Loans; (c) disbursing loan proceeds to entities other than the seller, the seller's attorney, or to pay off existing mortgage liens; (d) allowing the loans to close when the seller was not the owner of record for one year or more; (e) taking more money for themselves as attorney's fees than was permitted by the Closing Instructions; and (f) failing to notify AmTrust before closing the Subject Loans of conditions that violated the Closing Instructions.

156.    By failing to accurately reflect all disbursements on the HUD-1 Settlement Statements, to identify "flip" transactions, and to alert AmTrust to other indications of fraud and stop the closings for the Subject Loans, the Closing Agents caused AmTrust to fund loans it otherwise would not have funded.

157.    The Closing Agents' attorney malpractice proximately caused a loss to the FDIC-R in an amount to be proven at trial.

## COUNT IV – NEGLIGENT MISREPRESENTATION AND/OR OMISSION
### (CLOSING AGENTS)

158.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

159.    The Closing Agents made inaccurate statements of material fact or failed to disclose material facts to AmTrust in connection with the closings of the Subject Loans.

160.    The Closing Agents, as AmTrust's lawyers, had special relationships of confidence and trust with AmTrust.

24

161.    The false representations and material omissions by the Closing Agents include, but are not limited to   (a) failing to disclose that they disbursed loan funds in a manner inconsistent with the HUD-1 Settlement Statements; (b) preparing and submitting HUD-1 Settlement Statements that did not accurately reflect the actual receipts and disbursements from the closings of the Subject Loans; (c) failing to disclose that they disbursed loan proceeds to entities other than the seller, the seller's attorney, or to pay off existing mortgage liens; (d) failing to disclose that the sellers were not the owners of record for the properties for one year or more; (e) failing to disclose that the Closing Agents took more money for themselves as attorney's fees than was permitted by the Closing Instructions; and (f) failing to notify AmTrust before closing the Subject Loans of conditions that violated the Closing Instructions.

162.    The Closing Agents either knew their representations were false, made the representations without knowledge of their truth or falsity, or should have known the representations were false.

163.    As AmTrust's attorney, the Closing Agents owed AmTrust a duty to provide complete and accurate information.

164.    The Closing Agents intended that AmTrust would rely upon and be induced by the misrepresentations to fund the Subject Loans.

165.    AmTrust reasonably relied on the Closing Agents' representations and issued the Subject Loans.

166.    The Closing Agents breached theirs duties when they provided inaccurate and/or misleading information, when they failed to disclose information and/or omitted material information, when they failed to notify AmTrust of conditions violating the Closing Instructions, and when they failed to stop the closings of the Subject Loans.

25

167.   The Closing Agents' negligent misrepresentations proximately caused a loss to the FDIC-R in an amount to be proven at trial.

## COUNT V – NEGLIGENCE

### (TITLE AGENTS)

168.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

169.   The Title Agents were hired by AmTrust through the Closing Agents to provide accurate information, title commitments, and chain of title, and to perform other services, such as filing and recording deeds and mortgages.

170.   NMR prepared title commitments for the Spikes Transaction, the Bialko Transaction, and the Vogel Transaction.

171.   Select Service prepared title commitments for the Grant Transaction, the Thompson Transaction, and the Carpenter Transaction.

172.   The Title Agents prepared title commitments that contained information that was inaccurate and misleading at the time the title commitments were prepared regarding the identities of the owners of record for the Subject Loan transactions, the dates and manners by which the record owners obtained title to the properties.

173.   The Title Agents had a duty to provide AmTrust and all parties to the Subject Loan transactions with accurate information regarding the chain of title for the properties.

174.   The Title Agents knew or should have known that AmTrust would rely on the accuracy of the title commitments when it decided whether to fund the Subject Loans.

175.   AmTrust reasonably relied on the representations the Title Agents made in their title commitments regarding who the record owners of the properties were and how and when

26

they obtained title to the properties, and the chain of title for the properties when AmTrust
determined whether to fund the Subject Loans.

176.    AmTrust had adopted guidelines that assisted it in identifying possible fraud in its
loan transactions and that assisted it in identifying factors that would alert it to increased risk that
its loans would not be paid back.

177.    The identification of "flip" transactions was one of these guidelines, and
accordingly was a material fact to AmTrust in making the Subject Loans, because it was a sign
of potential fraud in the transactions and/or an indicator that the properties' values may in fact
have been lower than the value submitted at loan origination.

178.    The Title Agents' failure to provide title commitments that accurately reflected
the owners of record for the Subject Loan transactions, the date upon and manners by which the
record owners obtained title to the properties, and the true chain of title for the properties, as well
as providing title commitments that concealed "flip" transactions,  is a negligent breach of their
duties to AmTrust.

179.    The inaccurate, incomplete title commitments that the Title Agents provided to
AmTrust caused AmTrust damage, because the Title Agents failed to disclose the risks that
AmTrust was trying to protect itself against, including recent "flip" transactions and sellers who
were not the record owner of the properties for more than one year.

180.    If the title commitments had accurately reflected the true status of title to the
properties that were the subjects of the transactions, AmTrust would not have funded the Subject
Loans, all of which are now in default and severely under-secured.

181.    The Title Agents' negligence proximately caused a loss to the FDIC-R in an
amount to be proven at trial

**Jury Demand**

Plaintiff hereby respectfully requests a jury for all claims properly decided by a jury.

WHEREFORE, Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank prays that the Court order the following relief in its favor and against the Defendants as follows:

1.      An award of damages, costs, and attorney's fees against Defendants Rubin & Licatesi, P.C., Richard Harris Rubin, Edward Savran, Rosemary Hayden, NMR Advantage Abstract, Ltd., and Select Service Abstract, Inc.; and

2.      For all such other such legal or equitable relief this Court deems just and proper.

Dated:  New York, New York
        December 3, 2012

THOMPSON HINE LLP
Attorneys for Plaintiff FDIC as Receiver for AmTrust Bank

By: _____
Joseph W. Muccia
Emily J. Mathieu
Joseph.Muccia@thompsonhine.com
Emily.Mathieu@thompsonhine.com
335 Madison Avenue, 12th Floor
New York, New York, 10017
Telephone: 212-344-5680

AND

William W. Jacobs
Frank R. DeSantis
James L. DeFeo
Laura L. Watson
Bill.Jacobs@thompsonhine.com
Frank.DeSantis@thompsonhine.com
Jim.DeFeo@thompsonhine.com
Laura.Watson@thompsonhine.com

28

3900 Key Center
127 Public Square
Cleveland, Ohio  44114-1291
Telephone:  216-566-5500